FILED
U.S DISTRICT COURT
EASTERN DISTRICT OF LA

**UNITED STATES DISTRICT COURT** 2006 MAR -3 PM 3: 51

**EASTERN DISTRICT OF LOUISIANA** LORETTA G. WHYTE
CLERK

| | |
|---|---|
| **STELLA DELAY** | **CIVIL ACTION** |
| **VERSUS** | **NO. 04-3070** |
| **JO ANNE B. BARNHART** **COMMISSIONER OF SOCIAL** **SECURITY ADMINISTRATION** | **SECTION "R" (3)** |

## REPORT AND RECOMMENDATION

Plaintiff brings an action pursuant to 42 U.S.C. § 405(g) appealing a final decision by the Commissioner of Social Security which denied his claim for Disability Insurance Benefits under the Social Security Act (42 U.S.C. § 400 et seq.).  Now before the Court is plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment.  Having reviewed the parties' written submissions, the administrative record and the applicable law, the undersigned Magistrate Judge finds that there is substantial evidence in the record supporting the decision of the Commissioner, and thus, RECOMMENDS dismissal of the plaintiff's case with prejudice for the following written reasons.

### I.  BACKGROUND

#### A. Procedural History

Plaintiff, Stella Delay, filed an application for Disabled Widower's Benefits and Supplemental Security Income on June 11, 2002, alleging disability since March 28, 1991.[1]  The

---

[1]*See* Application for Widower's Insurance Benefits dated June 11, 2002 [Adm. Rec. 34-36]; Disability Report dated March 23, 2001 [Adm. Rec. 39].

1



Social Security Administration ("SSA") denied her application.[2]   Subsequently, plaintiff filed a

timely request for a hearing before an Administrative Law Judge ("ALJ").[3]   On February 10,

2004, Delay, accompanied by counsel and VE Katrina Virden, appeared before an ALJ.[4]   In a

decision dated May 25, 2004, the ALJ found the plaintiff not disabled and denied her

application.[5]   The ALJ's decision became final when the Appeals Council declined to review it

on September 9, 2004.[6]   Plaintiff then filed this timely action for judicial review of the

Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

### B. Factual Background

### 1. Plaintiff's Disability Claim

In her application for benefits, plaintiff alleged that she became disabled on March 28,

1991 due to arthritis of the lower back, an out of place pelvis, right leg and knee pain and bladder

problems.[7]   Plaintiff alleged that her combination of impairments prevents her from working

and that she has not even tried to work since 1988.[8]   Delay testified that her right arm was

---

[2]*See* Disability Determination and Transmittal dated December 5, 2002 [Adm. Rec. 28-32].

[3]*See* Request for Hearing by Administrative Law Judge dated December 13, 2002 [Adm. Rec. 33].

[4]*See* Transcript of February 10, 2004 Administrative Hearing [Adm. Rec. 237-258].

[5]*See* ALJ Gary L. Vanderhoof's Decision dated May 25, 2004 [Adm. Rec. 15-22].

[6]*See* Notice of Appeals Council Action dated September 9, 2004 [Adm. Rec. 6-9]].

[7]*See* Disability Report dated November 27, 2000 [Adm. Rec. 39].

[8]*See* Transcript of Administrative Hearing [Adm. Rec. 243]; Correspondence dated July 30, 2003 (stating that she had not been able to work since her accident on an RTA bus in 1991) [Adm. Rec. 160].

2

broken in a bus accident and it was never fixed.  She goes to a chiropractor to treat her spine and

arthritis in both hands and both knees.  Delay stated that she receives treatment at Charity

Hospital and takes Tylenol Arthritis for her pain and muscle spasms.[9]  Plaintiff reported that she

does not use any special equipment to ambulate and that she gets up once during the night to

attend to her personal needs.  Delay takes care of her personal needs, but has her grandaughter,

son and daughter do all of her housework.  Plaintiff noted that she does drive, but only for short

distances because it causes her back to hurt.  She can walk about eight blocks (i.e., the eight

blocks from her house to the bus stop) and can stand or sit for an hour at a time, but cannot climb

more than three steps.  Plaintiff further testified that she cannot lift more than ten pounds.[10]

Plaintiff was 54 years old when she appeared before the ALJ.[11]   At the administrative

hearing, plaintiff testified that she was widowed and had no dependent children under the age of

18.  Delay's granddaughter and her baby live in the plaintiff's house.   Plaintiff passed the sixth

grade and completed truck-driving school, but has never driven trucks for a living.   Delay

acknowledged that she can read, write and count money.[12]

### 2. Medical Evidence

The ALJ accurately summarized the medical evidence available.  That synopsis of the

medical evidence is adopted and reiterated below, to wit:

---

[9]*See* Transcript of Administrative Hearing [Adm. Rec. 243-244].

[10]*Id.* [Adm. Rec. 245-246].

[11]*Id.* [Adm. Rec. 241].

[12]*Id.* [Adm. Rec. 242-243].

The medical evidence indicates that the claimant has osteoarthritis of the lumbar spine, right elbow, and bilateral knees, impairments that are "severe" within the meaning of the Regulations but not "severe" enough to meed or medically equal, either singly or in combination, one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4.  Since the claimant's osteoarthritis has not resulted in an inability to ambulate effectively or perform fine and gross movements effectively, her condition fails to satisfy and part of section 1.00 of the listings.

I am aware that the claimant has asthma and that she alleges disability due to bladder problems and an out of place pelvis.  Although the claimant has suffered from recurring urinary tract infections, prescription medication has worked generally well to relieve her symptoms.  Likewise, the treatment records indicate that the claimant's asthma is well-controlled by medication.  I also note that pulmonary function tests on March 28, 2003 failed to show that the claimant suffers from a significant obstructive ventilatory defect (Exhibit 10F, pages 25-29).  Since claimant's asthma and bladder problems impose not more than minimal restrictions on her ability to perform basic work activities, I find these conditions to be non-severe impairments.  Further, despite the claimant's allegation of a pelvic disorder, x-rays of her pelvis on November 7, 2002 failed to show any evidence of fracture, dislocation or other disease (Exhibit 6F, page 6).

* * *

To the extent that claimant alleges an inability to perform any significant work activities on a sustained basis, her allegations and subjective complaints are found not to be fully credible when considered in light of the entirety of the evidence of record.

At a consultative internal medicine evaluation on May 30, 2001 with John F. Nitsche, M. D., the claimant's complaints included chronic right elbow, neck, and low back pain.  She informed that she is unable to completely extend or rotate her right elbow and occasionally experiences numbness in her left upper extremity when she is upset.  According to claimant, chronic low back pain does radiate into her hips and is associated with stiffness, it does not radiate down to her lower extremities.  Upon physical examination, the claimant exhibited normal sensation and muscle strength of her bilateral upper and lower extremities.  Dr. Nitsche found no evidence of muscle atrophy, abnormal muscle movements, or muscle spasms.  Despite some tenderness to palpation, the claimant's cervical spine had a normal range of motion.  Similarly, even though the claimant's lower lumbar region was tender to palpation, the range of motion of her lumbosacral spine was largely normal.  I note also that a straight leg raising test yielded negative results.  Aside from a decreased range of motion of the claimant's right elbow, Dr. Nitsche noted that the claimant had full range of motion of all peripheral joints.  In conclusion, Dr. Nitsche opined that the claimant would have difficulty performing heavy work specifically in doing pushing, pulling and overhead work with her

4

right upper extremity, due to impaired range of motion of the right elbow.  Dr. Nitsche also noted that the claimant had some diminished grip strength in her right hand. However, Dr. Nitsche further noted that the claimant had no problems with sitting, standing, walking and crouching.  She required no assistive device for ambulation.  Moveover, the claimant was able to independently climb on and off of the examining table and dress herself (Exhibit 2F).

When seen by consultative internal medicine examiner, Camalyn W. Gaines, M. D., on November 7, 2002, the claimant's major complaints included right arm, low back and right knee pain. Dr. Gaines found that the claimant suffers from lumbago secondary to degenerative disc disease of the lumbar spine and Grade I spondylolisthesis at L4-L5, absent any evidence suggestive of acute nerve root irritation or compression.  Dr. Gaines also found evidence suggesting a right sacroiliac joint dysfunction and mild osteoarthritis of her knees.  I note that there was no evidence which suggested joint laxity or muscle weakness of the muscles surrounding her knee joints.  Significant findings of synovitis involving the right lateral olecranon gutter was also noted.  Although Dr. Gaines did suggest that the claimant utilize a cane for long distance ambulation, I not that this was for pain relief and not because of lower extremity weakness. In conclusion, Dr. Gaines opined that the claimant should avoid activities requiring prolonged periods of sitting, standing, or walking unless she is allowed to alternate positions as needed.  It was also recommended that she limit activities requiring navigation of stairs, stooping, crouching, crawling, bending, kneeling, or squatting. Further, Dr. Gaines indicated that claimant should be able to lift up to 20 pounds without difficulty, although this should be done infrequently (Exhibit 6F).

In my review of the claimant's treatment records, I find that the claimant rarely complained to her physician of arthritic pain.  Despite some occasional complaints of lower extremity swelling, the claimant has informed that her arthritis is well controlled with her use of Tylenol (Exhibit 10F, page 10).  Further, although the claimant has frequently sought medical treatment during the period under consideration, her complaints and concerns have been for reasons completely unrelated to her alleged disabling conditions (Exhibit 10F).  The claimant has not generally received the type of medical treatment one would expect for a totally disabled individual.[13]

## II. STANDARD OF REVIEW

The function of the court on judicial review of a denial of benefits is to determine

whether "substantial evidence" supports the final decision and whether the Commissioner used

---

[13]See ALJ Vanderhoof's Decision [Adm. Rec. 17-19].

the proper legal standards to evaluate the evidence.[14]   If the Commissioner's findings are

supported by substantial evidence, they must be affirmed.[15]   "Substantial evidence" is more than

a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion.[16]   A district court may not try the issues *de novo*, re-

weigh the evidence or substitute its own judgment for that of the Commissioner, even if the

district judge believes that the evidence weighs against the Commissioner's decision.[17]   The

Court must carefully scrutinize the entire record to determine whether substantial evidence exists

to support the ALJ's findings.[18]   Nevertheless, "conflicts in the evidence are for the

Commissioner and not for the courts to resolve."[19]

 If proper principles of law were applied, and if the Commissioner's decision is supported

by substantial evidence, the findings are conclusive and must be affirmed.[20]

---

[14]42 U.S.C. § 405(g); *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000); *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999).

[15]*Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

[16]*Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001); *Newton*, 209 F.3d at 452.

[17]*Masterson*, 309 F.3d at 272; *Newton*, 209 F.3d at 452.

[18]*Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), *cert. denied*, 514 U.S. 1120 (1995); *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).

[19]*Masterson*, 309 F.3d at 272 (citations and internal alterations omitted).

[20]*See id.* (citing *Richardson*, 402 U.S. at 401)

## III. DISCUSSION

### A. The ALJ's Decision

To qualify for Social Security income or disability insurance benefits, the plaintiff must meet the requirements set forth in the Social Security Act.[21]  Specifically, the plaintiff must be under age 65, file an application for benefits and be under a disability as defined by the Act.[22] Those claiming disability insurance benefits under the Act have the burden of showing the existence of disability.  "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months."[23] Establishment of "disability" is a dual process.  First, the claimant must prove that she suffers from a medically determinable impairment.[24]  Second, the claimant must prove that her impairment or combination of impairments render her unable to engage either in the work she previously performed or other substantial gainful employment that exists in the national economy.[25]

The Commissioner utilizes a five-step sequential evaluation to aid in the determination of whether a claimant is disabled.[26]  A finding that the claimant is not disabled at any step is

---

[21]*See* 42 U.S.C. § 423(a) (2001).

[22]*See* 42 U.S.C. §§ 416(I), 423(a) (2001).

[23]42 U.S.C. § 423(d)(1)(A) (2001).

[24]42 U.S.C. §§ 416(I)(1), 423(d)(1)(A) (2001).

[25]42 U.S.C. §§ 416(I)(1), 423(d)(2) (2001).

[26]*Newton,* 209 F.3d at 453 (5th Cir. 2000).

7

conclusive and ends the inquiry.[27]  The five-step analysis was cogently restated in *Shave v. Apfel*:

> First, the claimant must not be presently working at any substantial gainful activity.  Second,  the claimant must have an impairment or combination of impairments that are severe.  An impairment or combination of impairments is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities."  Third, the claimant's impairment must meet or equal an impairment listed in the appendix to the regulations.  Fourth, the impairment must prevent the claimant from returning to his past relevant work.  Fifth, the impairment must prevent the claimant doing any relevant work, considering the claimant's residual functional capacity, age, education, and past work experience. At steps one through four, the burden of proof rests upon the claimant to show he is disabled.  If the claimant acquits this responsibility, at step five the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments.  If the Commissioner meets this burden, the claimant must then prove he in fact cannot perform the alternate work.[28]

In conjunction with steps four and five, the Commissioner utilizes a "residual functional capacity (RFC) assessment" to determine whether the applicant, notwithstanding severe impairment, has the physical and mental ability to perform work-related activities on a regular and continuing basis as is generally required by competitive, remunerative work.[29]  Thereafter, the Commissioner determines if the claimant has the physical and mental ability to perform her past relevant work.[30]  If the claimant's RFC meets or exceeds the requirements of her regular

---

[27]*Watson,* 309 F.3d at 272; *Leggett v. Chater,* 67 F.3d 558, 564 (5th Cir. 1995).

[28]*Shave v. Apfel*, 238 F.3d 592, 593 (5th Cir. 2001).

[29]RFC is defined as "what you can still do despite your limitations" and has three components, to wit: physical abilities, mental abilities, and other abilities affected by impairments.  20 C.F.R. § 404.1545(a) (2002); Soc. Sec. Ruling 96-8p, 61 F.R. 34474 (July 2, 1996).

[30]*See Chaparro v. Bowen,* 815 F.2d 1008, 1010 (5th Cir. 1987).

8

previous employment, the disability claim is denied.[31]  If not, the inquiry proceeds to step 5 where the Commissioner has the burden to show that the claimant can do work as it is generally performed in the national economy.[32]

In the instant case, there is no disagreement concerning the first four steps of the analysis. First, the ALJ found that plaintiff had not been engaged in substantial gainful activity since the alleged onset of disability. Second, the ALJ concluded that plaintiff's osteoarthritis of the lumbar spine, dislocated pelvis, right leg and/or knee pain and bladder problems are "severe" within the meaning of the regulations, but that these impairments do not meet or medically equal one of the listed impairments in Appendix 1.   Fourth, the ALJ determined that the plaintiff is unable to perform any of her past relevant work.  However, the ALJ found that plaintiff is capable of performing a wide range of light work activities on a regular basis, including work as a housekeeper, short order cook, food counter and cafeteria attendant and that such work was available in the national economy in statistically significant numbers.[33]  The ALJ further found that the claimant's allegations of *disabling* limitations and restrictions were not credible, to wit:

> The claimant's testimony and reports of pain and functional restrictions were not
> supported by the evidence overall in the disabling degree alleged and therefore
> lacked credibility.  With respect to the claimant's daily activities, I note that she is
> able to independently taker care of her personal needs, prepare meals, perform
> light household chores, and drive (Exhibit 7E).  At the hearing, the claimant
> testified that she is able to stand for one hour at a time, sit for one hour at a time,
> and walk eight blocks.  The claimant easily sat through the hearing.  I do not find
> my assessment of the claimant's residual functional capacity inconsistent with the

---

[31]*See* 20 C.F.R. § 404.1561 (2002).

[32]*See* 20 C.F.R. § 404.1566 (2002).

[33]*See* ALJ Vanderhoof's Decision [Adm. Rec. 21-22].

daily activities or reported physical capabilities.[34]

The ALJ concluded that plaintiff was not disabled under the Act.

## B. Residual Functional Capacity -RFC

Plaintiff contends that substantial evidence does not support the ALJ's RFC determination because the ALJ erroneously found that Delay can participate in occasional climbing, balancing, stooping, kneeling, squatting, crouching and crawling. Plaintiff urges the Court to find that these activities are inconsistent with Dr. Gaines' report. In sum, plaintiff argues that the vocational testimony is flawed because it is based upon incorrect restrictions.

The Court is not persuaded by plaintiff's argument. This Court's review of the record reveals that substantial evidence supports the ALJ's determination, including the findings of Dr. Gaines. Dr. Gaines did not, as plaintiff suggests, opine that plaintiff could not engage in any stooping, crouching, crawling, etc. Indeed, Dr. Gaines' did not ban the aforesaid functions, but rather advised that the plaintiff "should limit activities which require navigation of stairs, stooping, crouching, crawling , etc."[35]

In this case, the ALJ discussed the relevant evidence, which is reiterated above in greater detail. ALJ Vanderhoof considered the plaintiff's subjective complaints of *disabling* pain and limitations and found them generally not credible in light of the medical evidence. The ALJ complied with the requirements of SSR 96-7p and the credibility determination should not be disturbed as it is not patently wrong. Dr. Gaines' opinion was simply that Delay could only engage in occasional climbing, balancing, stooping, kneeling, squatting, crouching and crawling,

---

[34]*Id.* [Adm. Rec. 18-19].

[35]*See* Report of Dr. Camalyn Gaines dated November 20, 2002 [Adm. Rec. 125].

and those are precisely the same limitations upon which the testimony of the vocational expert is

based.   The plaintiff's complaints of completely *debilitating* symptoms are not supported by Dr.

Gaines' report or the medical evidence as a whole.

 This Court accepts the factual findings of the ALJ, especially with respect to resolving

conflicts in medical testimony.   The Fifth Circuit has consistently held that the ALJ is

responsible for determining credibility and resolving conflicts in medical testimony.[36]   The fifth

step in the sequential inquiry above requires the ALJ to determine the plaintiff's RFC, *i.e.*,

whether the plaintiff is capable of performing other work, which exists in substantial numbers in

the national economy, despite any limitations caused by plaintiff's condition. In determining the

plaintiff's RFC, an ALJ must consider plaintiff's age, education, and work experience. 42 U.S.C.

§ 423(d)(2)(A); see also20 C.F.R. 404.1520(e)-(f).

 In this case, the ALJ found that plaintiff was fifty four years of age (*i.e.*, closely

approaching advanced age),[37] with a limited education and no transferable skills from any past

relevant work.   Relying on VE testimony,  ALJ Vanderhoof determined that the plaintiff had the

residual functional capacity to perform a wide range of light work.[38]  The ALJ posed the

following hypothetical question to the ALJ, to wit:

---

[36] *See Masterson v. Barnhart*, 309 F.3d 267, 272 (5thCir.2002) (stating that the ALJ has
the responsibility to resolve questions of credibility and questions arising from conflicting
medical opinions).

[37]ALJ Vanderhoof's Decision (citing 20 C.F.R. §§ 404.1563 and 416.963 and noting that
those regulations define a 54 year old individual as one who is "closely approaching advanced
age") [Adm. Rec. 20].

[38]*Id.* [Adm. Rec. 20-22].

Then, I'm going to pose some hypotheticals to you at this time. The Claimant alleges on onset of disability at age 52 and is currently 54. She dropped out of the seventh grade. She never finished that, I understand, and her past relevant work history ... janitorial work, which she described here today.... [F]or the first hypothetical, I'm going to restrict her to a maximum lifting and carrying of 20 pounds occasionally, 10 pounds frequently, which is roughly a gallon of milk, which weighs 8.8 pounds.... [S]he'd have to limit activities that would require continuous navigation of stairs, stoop, crouch, crawl, bend, kneeling, and squatting. So it would have to be done on an occasional basis, not on a frequent and continual basis. Also, it's said that she should limit overhead reaching with her right upper extremity.[39]

Within the confines of that hypothetical individual, VE Virden testified as to a number of jobs that the plaintiff could perform, including housekeeper, cashier, food counter occupations and cafeteria attendant. VE Virden further testified that the aforesaid work would permit taking breaks and alternating between sitting and standing.

A hypothetical question to a VE is deemed defective and in error unless (1) the assumptions reasonably incorporate all of the disabilities *recognized by the ALJ*, and (2) the claimant is afforded the opportunity to correct the deficiencies in the ALJ's question.[40]   Part one of the test is met in this case because the ALJ's hypothetical question included all of Delay's *disabilities as recognized by the ALJ*. The ALJ specifically rejected plaintiff's uncorroborated testimony that she was totally incapacitated from performing all work and specifically incorporated all of the findings of Dr. Gaines.

SSR 99-2p provides that "[i]n assessing [residual functional capacity], all of the individual's symptoms must be considered in deciding how such symptoms may affect functional

---

[39]Transcript of Hearing[Adm. Rec. 251].

[40]*See Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001); *Bowling v. Shalala*, 36 F.3d 431, 437 (5th Cir. 1994).

capacities." SSR 99-2p.  The ALJ fully complied with this requirement.  Indeed, the hearing decision contains a thorough and exhaustive discussion and evaluation of plaintiff's symptoms based on the medical evidence and her own testimony at the hearing.

The ALJ has sole responsibility for determining a claimant's disability status.[41]  Even in a case where there is conflicting evidence regarding an issue reserved for the Commissioner, he has the responsibility to resolve that conflict.[42]  The final decision on whether a claimant is disabled for purposes of the Act is a legal one rather than a medical one and that determination may be made only by the Commissioner.[43]  The ALJ is not required to accept a plaintiff's subjective complaints, may properly consider the credibility of a claimant when making a determination of disability and can present a hypothetical on the basis of his own assessment if he reasonably finds that the plaintiff's testimony is inaccurate. The ALJ's hypothetical question and the response by the VE is supported by substantial evidence.

Plaintiff also contends that the VE's testimony is flawed because the VE consulted the "Employment Statistics Quarterly" which includes only semi-skilled or skilled jobs.  Plaintiff argues that the VE should have consulted the "Unskilled Employment Quarterly" because the plaintiff previously worked at an unskilled level and has acquired no skills.

---

[41]*Paul v. Shalala,* 29 F.3d 208, 211 (5th Cir. 1994); *Moore v. Sullivan,* 919 F.2d at 905.

[42]*Greenspan,* 38 F.3d at 237; *Martinez v. Chater,* 64 F.3d 172, 176 (5th Cir. 1995); *Spellman,* 1 F.3d at 364; *Moore,* 919 F.2d at 905.

[43]*See Tamez v. Sullivan,* 888 F.2d 334, 336 n.1 (5th Cir. 1989).

In response to cross-examination by the plaintiff's counsel, VE Virden specifically testified that she had identified jobs from the "U.S. Bureau of Census, 1991 Revised 4th Edition of the Dictionary of Occupational Titles (DOT)."[44] The VE explained that the DOT incorporates SVP levels 1 and 2, "which is unskilled work."[45] The Commissioner aptly points out that it was not necessary for the VE to reference the "Unskilled Employment Quarterly." Indeed, all of the jobs identified by the VE were unskilled, simple and repetitive jobs.

The law of the Fifth Circuit is that the ALJ may rely upon the vocational expert's testimony, where, as here, the record reflects an adequate basis for doing so.[46] The Fifth Circuit has recognized that the DOT is not comprehensive in that it cannot and does not purport to include each and every specific skill or qualification of a particular job and concomitantly emphasizes the value of the vocational expert's testimony in this regard. In *Carey v. Apfel*, 230 F.3d 131 (5th Cir. 2000), the court noted:

> The value of a vocational expert is that he [or she] is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed.[47]

The Fifth Circuit has further held that "DOT job descriptions should not be given a role that is exclusive of more specific vocational expert testimony with respect to the effect of an individual

---

[44]*See* Transcript of Hearing [Adm. Rec. 256].

[45]*Id.*

[46]*See Carey v. Apfel,* 230 F.3d 131, 146 (5th Cir. 2000).

[47]*Id.* at 145.

14

claimant's limitations on his or her ability to perform a particular job."[48]

Having considered the aforesaid governing general principles, the Court notes that ALJ Vanderhoof complied with same and solicited the assistance of a vocational expert because Delay suffered additional exertional and/or non-exertional impairments which potentially precluded her from performing all or substantially all of the requirements of light work.  Plaintiff in this case suffers from additional limitations that make the Medical-Vocational Guidelines inapplicable.[49]  Thus, the ALJ relied upon the services of VE Virden to compare the plaintiff's capabilities and limitations with the unique requirements of the jobs specified.  The ALJ posed a hypothetical question to the vocational expert which included all of the limitations identified by Delay that were supported by objective medical evidence.  The vocational expert testified that Delay, in light of her impairments found by the ALJ, could perform the jobs of housekeeper, cashier, short order cook and cafeteria attendant.  All of the jobs specified are light, unskilled work which exists in significant numbers in the national economy.

The ALJ properly relied on the vocational expert's testimony and the Commissioner's decision is supported by substantial evidence.   Although the ALJ has a duty to fully develop the facts, the claimant has the burden of proving her disability.[50]  Delay did not meet that burden. The determination that Delay retains the ability to do light work, which includes work at the

---

[48]*Id.*

[49]*See* ALJ Vanderhoof's Decision [Adm. Rec. 20].

[50]*Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir.1995).

15

sedentary level, is supported by the credible testimony of the vocational expert and the medical evidence.

The law of the Fifth Circuit is that the court should not reverse the ALJ's decision unless plaintiff can show that she was prejudiced by such error.[51]  To establish prejudice, Delay must demonstrate that the error alleged might alter the result.  Plaintiff has failed to demonstrate error and, given the record before the court, Delay has not shown that she was prejudiced by the ALJ's findings.

The ultimate goal is determining, as this Court has, that there is substantial evidence supporting the ALJ's decision.[52]  Accordingly, the plaintiff's claims of error are without merit.

## IV. CONCLUSION

Plaintiff's points of error fail to show either that the ALJ applied improper standards of law or that the decision is not supported by substantial evidence, either because it was based on a defective hypothetical question or otherwise.  Accordingly, IT IS RECOMMENDED that the Commissioner's decision be AFFIRMED and that the plaintiff's complaint be DISMISSED WITH PREJUDICE.

## V. OBJECTIONS

Objections must be: (1) specific, (2) in writing, and (3) served within ten days after being served with a copy of this report.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 1(a), 6(b) and 72(b)  A party's failure to object bars that party from: (1) entitlement to *de novo* review by a district judge; and (2) appellate review of the unobjected-to factual findings and legal conclusions

---

[51]*See Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir.2000).

[52]*Id.* at 147.

accepted by the district court, except upon grounds of plain error. *Douglass v. United Services Automobile Association,* 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 3rd day of March, 2006.

DANIEL E. KNOWLES, III
UNITED STATES MAGISTRATE JUDGE

17